The first case this morning will be case number 151720, United States v. James Stile. Thank you. Thank you. Good morning, may it please the court, Alex Steele for Mr. Stile. Before I begin with the argument, I would like to correct an error in footnote 4 of the appellant's brief, reply brief, I'm sorry, which relates to the absence of an affidavit from a witness to the prison altercation that formed one of the bases for the obstruction enhancement. And that footnote states, quote, there's no indication in the record that the judge considered the potential witness's absence or drew any conclusions based upon it, end quote. In fact, the judge did consider the fact that the witness did not submit an affidavit and that he rejected Mr. Stile's position because there was no countervailing evidence in the record, such as the affidavit, and that's at addendum 26. If you keep the record in proper order, I suggest that you confirm that correction by a 28-J letter later this week. I'd be happy to do that, Your Honor. The judge did not, however, draw any nefarious conclusions about the absence of the affidavit, so that portion of the footnote remains correct. And with that, I'd like to turn to Mr. Stile's first argument, which is that the sentencing judge in this case erroneously applied the enhancement for obstruction of justice, which in turn led to the erroneous denial of credit for acceptance of responsibility. The obstruction enhancement was based on two separate findings. First, that Mr. Stile intimidated a witness when he engaged in a physical altercation with a fellow inmate. And second, that Mr. Stile committed perjury at a suppression hearing. I'd like to begin with the latter. The testimony at issue is an exchange between Mr. Stile and the prosecutor, in which the prosecutor asked Mr. Stile a series of questions about his familiarity with Bingham, the town in which the pharmacy robbery was committed. The prosecutor asked, Are you familiar with Bingham, and how many times have you been there? And Mr. Stile answered, Flew Bingham once, en route to Willow Demick Pond to go fishing, and came back there one time and had pizza. He later replied in response to another question from the prosecutor that he had been in Bingham only once. And the judge found that that testimony was a lie. The way the judge interpreted that testimony was that Mr. Stile was saying that he had done all of those things on the same day. That is, that he had gone to Willow Demick Pond, gone fishing, come back, had pizza, and the judge inferred also committed a pharmacy robbery on that day. And the judge just found that incredible, and so he said, Well, Mr. Stile has committed perjury. But I would argue that there is no other reasonable interpretation of that testimony except that Mr. Stile was saying, One time I passed through Bingham on route to Willow Demick Pond. That is, he did not go to Bingham. And on the second occasion, he stopped in Bingham and he had pizza. And that was, of course, the day that he also committed the pharmacy robbery, but he was not bound to admit that fact at the suppression hearing. So the judge clearly erred when he found that that testimony was perjurious. Now, of course, there is the question of whether that makes a difference, because the obstruction enhancement was also based on the fact that Mr. Stile had allegedly intimidated a witness because that witness had acted as a confidential informant to the government. Mr. Stile's position was that the witness had made a sexual advance to him, that it had nothing to do with the fact that he had acted as a confidential informant. But he didn't testify initially at the sentencing hearing, and that appears to have been on the advice of his attorney. But when he realized that the judge was, in fact, planning to rule against him and had- The judge did, in fact, rule against him. Correct. I misspoke. He realized that the judge believed that this act was committed because the man had acted as a confidential informant, had disclosed information to the government. And that was based on the evidence that the judge had. That was based on the evidence that the judge had. There was no reason to think there would be any additional evidence. I wouldn't say there was no reason to think that, because- Why would he make the ruling? Well, Mr. Stile had argued, you know, the way that the proceeding went was not as clear as it could have been. It would have been better if Mr. Stile or his lawyer prior to the ruling had stood up and said, Mr. Stile would like to testify. And unfortunately, that's not how it happened. What happened was Mr. Stile went confronted with the fact that the judge was, in fact, ruling that he had intimidated this witness, stood up and said, Wait a minute, I'd like to add to the record here. And that's when the judge essentially threatened him with an additional- First of all, it wasn't a question of adding to the record. All right? What the lawyer said was that he wanted the judge to reconsider his ruling. Reconsider. That's the word that's used in the transcript. Yes, he asked the judge to do that. Well, I believe he asked the judge to do that in part to make a record so he could preserve it. And I'm afraid I don't understand the argument that you're making in your brief.  All right? You could be arguing that when a defendant proposes to forget the fact that it's belated, proposes to testify at a sentencing hearing where, by doing so, he runs the risk of increasing his sentence, that it's error per se for the judge to give him a warning? I don't think it's error per se. So then you must be arguing that the judge's word choice in this case, the judge's choice of language, right, was improper. That the judge, in giving that warning, came across in a threatening manner rather than simply in an admonitory manner. That's correct. And what would our standard of review be on a word choice question like that? It's abuse of discretion, isn't it? Well, it's a due process question, I would argue. No, it doesn't mean that it's a due process question. You're essentially challenging the judge's choice of language. And that's the type of question that typically calls for abuse of discretion review. I would argue that because the issue is whether the judge actually violated Mr. Stiles' due process rights, that it's a harmlessness analysis because it's a constitutional violation. But the fact that it's a constitutional violation or the claim is constitutional doesn't normally affect the standard of review.  Well, the fact that the claim is one of constitutional, if the standard of review, right, is abuse of discretion, the fact that the underlying claim may be of a constitutional violation wouldn't affect that. Well, even if it doesn't affect it, then the judge did, in fact, abuse his discretion because he essentially already determined that Mr. Stiles was bound to commit perjury when he felt it was Mr. Stiles' right to get up and volunteer if he wanted to. Take that one thing at a time. Take that one thing at a time. He already determined that Mr. Stiles was bound to commit perjury. Whose fault is that that Mr. Stiles hadn't suggested that he wanted to testify until after the judge had ruled? Well, it appears from the record that he wasn't testifying on the advice of his lawyer. Yes, that's right. And so the judge had made a ruling based on the evidence that he had, right? That's correct. All right. So he told Mr. Stiles that. He told Mr. Stiles that. And he warned Mr. Stiles that it might not be easy to change his mind because he'd heard all the other evidence. He did, but the manner in which he warned him strongly suggested to Mr. Stiles that if he got up and said another word, even if every word he said was true, if he got up and said another word, then that judge was going to enhance his sentence again for perjury. Did the judge say that? Did the judge say anything resembling, I'll enhance your sentence for true testimony? I think it can be inferred from the dialogue that happened and the manner in which this occurred. Well, the judge said, if you'll give me a moment to actually get to the testimony itself. Sorry, I know I'm running out of time here. Well, I can't at the moment find the testimony, but essentially what the judge was saying to Mr. Stiles, was, look, I've already made up my mind. I don't believe a word you say, and I'm not going to believe a word you say. And therefore, if you stand up and say it anyway, I will enhance your sentence. He didn't quite say that. He had an if in there, which is a big difference. And since he'd already heard all the evidence that had been offered by both parties and made a decision, isn't it a benefit to Stiles that when Stiles proposed he want to reopen, that the judge let him know just how convinced he was by the evidence? I would think Stiles is in a better position for the judge having spoken because Stiles had more information than he would have had had the judge just sat there quietly, let him hang himself, and then find him guilty of perjury. Well, we're presupposing that he would be hanging himself, but it is entirely possible that whatever testimony he gave may have swayed the judge. He alluded to the testimony that he was going to give, which was that this inmate got all of the information that he had. It was quite detailed information from discovery that had been in Mr. Stiles' cell, and that's a probable thing to have happened. Inmates do often keep their personal belongings in their cells, and this man was bunking with him and could very easily have led that discovery and then said to the government, oh, I had a conversation with Mr. Stiles, and here are all the details. And that's what Mr. Stiles was trying to get across to the judge as to an explanation for why this man might have had all of that information and why this assault actually had nothing to do with that. Sure, and didn't the judge say, well, listen, I've already heard compelling evidence. In fact, if I had to find it beyond a reasonable doubt, I likely would have. And if you get up there and testify, then you're going to potentially hang yourself. Why isn't that just the right thing to say? Because I think it's very similar to what happened in Webb v. Texas, which is that it's denying the defendant the right to present his defense. I would ask that the court remand for resentencing. Thank you. Good morning, Your Honors. Renee Bunker on behalf of the United States. I'll start with the obstruction enhancement based on Stiles' assault of the inmate CI, where within about 18 days after Stiles robbed the pharmacy with a shotgun, pointing it at employees and tying them up, evidence showed that he made admissions to the inmate. Unbeknownst to him, the inmate was a CI. And when he learned that, he violently assaulted the inmate. The defense objected to the obstruction enhancement in written materials and against sentencing. And what's important here is before the judge went into its analysis, lengthy, thoughtful analysis, on this aspect of the obstruction enhancement, the judge looked to defense counsel and said, is there anything you wish to present? Defense counsel said, no, sir. No evidence. Only argument. Defense counsel proceeded to argue. The court then went into its rather lengthy, thoughtful analysis on the issue. The court then issued its final ruling. The court then turned to the next issue. Only then, after hearing the bad news, did Stiles ask the court to, I think, judge sell it, be properly characterized it, to reconsider its ruling. There's no constitutional right to have a reconsideration after ample opportunity to have defended the issue, presented evidence, et cetera. The court, I mean, Stiles asked the court to reopen the evidence. And, yes, Stiles' attorney said, contrary to my own strong advice, I think he said, something along those lines, squirrelly against my advice, Stiles wanted to testify. The court, much like, unlike in Webb, much like in, I think it's Santiago Barrasil, I'm probably torturing the pronunciation, going to Judge Kayada's comment, the court, there the court noted that there the admonition was perhaps even at more length than what Judge Woodcock went into here, going to the various crimes that the witness could be charged with. And the court noted that, to some extent, the warning bolstered the voluntariness of the decision by the witness subsequently to decline to testify. And here it's important to note that, although there was no obligation on the court to open the case for new evidence or reconsideration, Judge Woodcock actually entertained the idea and made it very clear to Mr. Stile that he said not once but twice, Judge Woodcock said, you have a choice. The only time he shut Mr. Stile down was when he started arguing, re-arguing the case and complaining about his own attorney. He said not once but twice, Mr. Stile, you have a choice. You can testify, take the stand, or you can accept the ruling. Mr. Stile, after consulting with counsel multiple times, accepted the ruling. And going back to, I think, Judge Kayada, you mentioned there was always an if there. There was never the strong link which Stile has proffered that the judge had already made up its mind regarding credibility. The judge repeatedly said, if you choose to testify, if you testify and I find, and you testify untruthfully, you will receive a harsher sentence. Not only is that completely different, not only was that within the judge's discretion, because we're talking sentencing proceedings and not a trial, and the admissions at Webb went far beyond the court there, personally promised that the witness would be indicted on perjury and be convicted and sentenced with a sentence to run concurrent that would affect parole opportunities. This was nothing like Webb. And with that, we submit that not only was there no constitutional violation, there was no constitutional right for the reconsideration or reopening of the evidence, but here there was certainly no abuse of discretion in how the court handled the belated request and Stile's ultimate voluntary choice. Can I ask you a question? Is it true that the court could have lawfully, or is it likely, let me rephrase that, is it likely that the court would have given him a harsher sentence based on an additional obstruction finding? That's completely speculative. I think if there was ever a judge or a case, I think Mr. Stile and Judge Woodcock at sentencing made it very clear that they had a long, I think upwards of four-year history together of litigation, and they know each other very well. And again, we're at sentencing. If there's ever a judge to assess, express concerns about the possibility of continued perjury, Judge Woodcock would have been in a good position to do that. Whether or how Mr. Stile, if he decided to testify, if he had gone out, I think it's fair to say that my point says that it's probably... What I'm really asking is that there was an enhancement for obstruction and there were two bases for that enhancement. So if there became three bases, would the enhancement have been more when it wasn't more with just two bases? No, I don't know how far within the guidelines the judge gave a mid-range sentence. I didn't get the sense that we were talking about a separate perjury obstruction enhancement. But you're suggesting that instead of giving a mid-range sentence, the judge could easily have sentenced at the top of the guidelines even without any further enhancement or variance. Exactly, and that's how I read the record. It would go to the history and characteristics of the defendant, and there was no discussion about a subsequent either perjury charge, unlike in Webb, or a new conviction for perjury. And I might add that the record somewhat contradicts that Hadstile had taken the stand and presented that discovery argument that he made to the court that as the sentencing memo the government filed in Government's Exhibit 6, which is the report of the C.I.'s very detailed information that the C.I. provided to ATF, that's in the government's addendum at 33 to 34, and to some extent the court's ruling shows the amount of detail that that C.I. provided. And some of those details could not or would not have been in Hadstile's discovery. So we submit that it would be a far-fetched to have found that that was credible. For instance, the C.I. reported that Hadstile told the C.I. that he had, that Emerson, Officer Emerson had stopped him about a quarter mile before he was about to swap the plates back out on his van. That would have been a discovery, particularly at this early, early stage. We're talking just a few months. Hadstile was still planning on going to trial. These admissions hadn't been made publicly yet. Hadstile told the C.I. that had the cops tried to search his van at that juncture, he would have given his dogs, well-trained dogs, an order in Russian to attack the cops. That wouldn't have been a discovery. Hadstile told the C.I. that he had given the shotgun he used in the robbery to a friend to dispose of. That wasn't there. We didn't know that yet. Hadstile told the C.I. that Hadstile had previously, 15 years earlier, robbed another pharmacy in New York. Hadstile told the C.I. that he had concerns that the police dive team might go to his house and search a pond or a lake or body of water near his home. None of those aspects of Hadstile's mind, let alone the details that Judge Woodcock also viewed about how and why Hadstile committed the robbery, would have been in the discovery. And some of the details could be summarized. When you say none of them would have been in the discovery, are you saying that we can look at the record and determine that they were not in the discovery, or are you just responsing in sort of the abstract to an argument that was never made because he didn't testify? Somewhat in the abstract. The discovery is not in the public record. I'm just responding that the details that I just mentioned, it's just not the kind of stuff that is in discovery. And given that we were three months after the robbery itself, that information, as Judge Woodcock sort of pointed out, wasn't known to the government at that point. But it's not the discovery itself. Their argument doesn't make any difference, does it? If the judge gave a constitutionally impermissible warning, if the judge gave what amounted to a threat instead of a warning, then it didn't matter what the truth of the situation was as far as the other inmate and why he was saying what he was saying. If the judge did cross any constitutional line or any line set by the law in the admonition he gave to Stile, then it doesn't make any difference either. So I'm puzzled as to why you're arguing that. I was just going off on a tangent in response to Stile's argument that it was probable that his testimony would have made a difference. And the government agrees that this was a choice of words. There was certainly, given the belated, given the ample opportunity to garnish witnesses' exhibits, testimony, and having done so only after the judge had thoroughly analyzed the issue and issued his ruling, there's certainly no violation, constitutional or otherwise, by the courts. Had the court outright denied the motion to reconsider at that point, I think the case of Zuleta Alvarez out of our circuit in the Monaco case, there wouldn't have been any abuse of discretion at that point to just flatly deny the motion for reconsideration. That the judge entertained more and chose certain words within its discretion to provide Mr. Stile with some appropriate warnings as to what might happen if he chose to take the stand and if the court found that he was testifying untruthfully were a matter of discretion. And we submit that there was no error, certainly no abuse of discretion. No error or no plain error? Well, our first and foremost position was that Rule 32 was never mentioned below or due process. And that also contrasts this case from Webb in terms of that. There I think that Webb actually raised a constitutional violation, but right, it would be no plain error. We argue no error, plain error otherwise. Thank you. Thank you.